COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


TACTICAL GROUP, INC.

v.   Record No. 1675-95-3                    MEMORANDUM OPINION*
                                                  PER CURIAM
JIMMY RAY LUCAS,                             DECEMBER 29, 1995
J. H. PENCE COMPANY,
FIRST OF GEORGIA INSURANCE COMPANY, AND
UNINSURED EMPLOYERS' FUND

AND

UNINSURED EMPLOYERS' FUND

v.   Record No. 1635-95-3

TACTICAL GROUP, INC.,
JIMMY RAY LUCAS, J. H. PENCE COMPANY, AND
FIRST OF GEORGIA INSURANCE COMPANY


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (Mark D. Kidd; Osterhoudt, Ferguson, Natt, Aheron &
              Agee, P.C., on brief), for Tactical Group, Inc.

              (Terry L. Armentrout; Roger Ritchie & Partners,
              P.L.C., on brief), for Jimmy Ray Lucas.

              (William C. Walker; Donna White Kearney; Taylor &
         Walker, on briefs), for J. H. Pence Company
              and First of Georgia Insurance Company.

              (James S. Gilmore, III, Attorney General; John J.
         Beall, Jr., Senior Assistant Attorney General;
         Christopher D. Eib, Assistant Attorney General, on
         brief), for Uninsured Employers' Fund.



     Tactical Group, Inc. ("Tactical") contends that the Workers'

Compensation Commission erred in finding that (1) Jimmy Ray Lucas

_____
         *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

was an employee of Tactical rather than an independent contractor; (2) Tactical employed three or more workers, making it subject to the Workers' Compensation Act ("the Act"); (3) Lucas earned an average weekly wage of $613.02; and (4) Lucas proved he sustained an injury by accident arising out of and in the course of his employment.  The Uninsured Employer's Fund ("the Fund") cross-appeals and contends that the commission erred in (1) allowing J.H. Pence Company ("Pence"), the statutory employer, to raise a Code § 65.2-600 notice defense at the July 27, 1994 hearing; (2) finding that Lucas did not give Pence timely notice of his September 20, 1993 injury by accident; and (3) refusing to dismiss Lucas' application when he failed to appear at the second evidentiary hearing on January 12, 1995. Upon reviewing the record and the briefs of the parties, we conclude that these appeals are without merit.  Accordingly, we summarily affirm the commission's decision.  Rule 5A:27.

TACTICAL'S APPEAL: RECORD NO. 1675-95-3

I.  Employee vs. Independent Contractor

"What constitutes an employee is a question of law; but whether the facts bring a person within the law's designation, is usually a question of fact."  Baker v. Nussman, 152 Va. 293, 298, 147 S.E. 246, 247 (1929).  On appellate review, the findings of fact made by the commission will be upheld when supported by credible evidence.  James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

2

Generally, an individual "'is an employee if he works for wages or a salary and the person who hires him reserves the power to fire him and the power to exercise control over the work to be performed. The power of control is the most significant indicium of the employment relationship.'" Behrensen v. Whitaker, 10 Va. App. 364, 367, 392 S.E.2d 508, 509-10 (1990) (quoting Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 98, 294 S.E.2d 840, 893 (1982)). The employer-employee relationship exists if the power to control includes not only the result to be accomplished, but also the means and methods by which the result is to be accomplished. Id. at 367, 392 S.E.2d at 510.

Claimant testified that Tazwell K. McDole, Tactical's owner, hired him to install school lockers in Spotsylvania County. McDole paid Lucas by the hour, not by the job. Lucas did not use his own tools. Instead, he used tools provided by Tactical or Pence. McDole decided when and where Lucas would work. On various occasions, McDole showed Lucas the layout of the jobsite. Lucas built the lockers and McDole retained responsibility over their placement. According to Lucas and co-workers Reese Painter and Mike Woodward, Lucas supervised the job, keeping time cards and distributing paychecks to other employees for McDole.

The testimony of claimant, Painter, Woodward, and McDole provides credible evidence to support the commission's finding that the right to control the Spotsylvania job clearly rested with McDole. Accordingly, the commission did not err in ruling

3

that Lucas was Tactical's employee.

## II. Applicability of the Act to Tactical

An employer who has three or more employees regularly in service in the same business in Virginia is subject to the Act. Cotman v. Green, 4 Va. App. 256, 258, 356 S.E.2d 447, 448 (1987).

In ruling that the Act applied to Tactical, the commission found as follows:

> While McDole testified that he is merely a "job shopper" who finds work for Pence, the weight of the evidence establishes that McDole, in his business capacity with Tactical, is in the business of installing school equipment. He has hired three or more employees in order to carry out that business. The evidence does not support a finding that Tactical was subcontracting this work to independent contractors. Each worker was paid on an hourly basis, and Tactical had the ability to control monetary disbursement, work conditions, and the end result. We find that the co-workers were in the same status as [Lucas], i.e., an employee of Tactical.

The testimony of claimant, Painter, Woodward, and McDole provides credible evidence to support these findings. Accordingly, the commission did not err in concluding that the Act applied to Tactical.

## III. Average Weekly Wage

The commission calculated Lucas' $613.03 average weekly wage by dividing the net wages he actually earned on the Spotsylvania job ($3,503.00) by the forty days he worked for Tactical. Tactical contends that the commission erred by not dividing the $3503.00 by fifty-two weeks. We disagree.

"It was the duty of the Commission to make the best possible

5

estimate of . . . impairments of earnings from the evidence adduced at the hearing, and to determine the average weekly wage . . . ." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986). In the absence of a fifty-two week pay history, the average weekly wage may be calculated by "dividing the earnings during that period [the employee worked] by the number of weeks . . . which the employee earned wages . . . , provided that results fair and just to both parties will be thereby obtained." Code § 65.2-101 ("Average weekly wage"). The calculation of average weekly wage "is a question of fact to be determined by the Commission which, if based on credible evidence, will not be disturbed on appeal." Id. "Thus, if credible evidence supports the commission's findings regarding the claimant's average weekly wage, we must uphold those findings." Chesapeake Bay Seafood House v. Clements, 14 Va. App. 143, 146, 415 S.E.2d 864, 866 (1992).

The record proved that Lucas worked forty days on the project. Thus, the commission reasoned that "[d]ividing the wages earned with this employer by 52 weeks would not produce an equitable result." Nothing in the record suggests that this method was not fair and just to both parties. Credible evidence supports the commission's method of calculating Lucas' average weekly wage, and it is not contrary to the provisions of Code § 65.2-500. Accordingly, the commission did not err in awarding Lucas benefits based upon an average weekly wage of $613.03.

## IV.  Injury by Accident

Tactical argues that Lucas was not credible, and, therefore, the commission erred in finding that he proved that he sustained an injury by accident arising out of and in the course of his employment on September 20, 1993.  However, "[i]n determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

On appeal, we view the evidence in the light most favorable to the prevailing party below.  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  Lucas testified that, on September 20, 1993, he sustained a back injury when he fell while carrying lockers down a flight of stairs.  The commission, in its role as fact finder, reviewed the witnesses' testimony and the medical records, and resolved any inconsistencies in favor of Lucas.  Lucas' testimony is consistent with the history he reported to Dr. Frederick Fox, his treating physician.  Lucas' testimony, the medical records, and McDole's testimony (that Lucas notified him of the accident several days after it occurred) provide credible evidence to support the commission's finding that Lucas sustained a compensable back injury on September 20, 1993.  Thus, we are bound by this finding on appeal.

7

I. and II.  Pence's Notice Defense

The Fund contends that the commission erred in allowing Pence to raise a lack of notice defense, Code § 65.2-600, at the July 27, 1994 hearing because Pence did not list lack of notice as one of its defenses in its answers to interrogatories.  The record supports the commission's finding that, at the beginning of the July 1994 hearing, Pence adopted all of Tactical's defenses, which included a lack of notice.  Thus, the Fund knew from the beginning of the hearing that Pence intended to rely upon lack of notice as a defense.  The record also shows that the deputy commissioner provided the Fund with an adequate opportunity to take further evidence on Pence's defense at the second evidentiary hearing held on January 12, 1995.  Because the record shows that Pence's course of action did not result in prejudice to the Fund, we cannot say that the commission abused its discretion in allowing Pence to rely upon the lack of notice as a defense.

Moreover, credible evidence, including the testimony of Lucas and McDole, supports the commission's finding that Pence did not receive timely notice of Lucas' accident as required by Code § 65.2-600.  Although McDole testified that he informed Pence's general manager that someone had been injured on a Stafford County job, he did not testify that he specifically notified Pence of Lucas' September 20, 1993 accident on the

8

Spotsylvania County job.  When Stephen P. Hawkins, vice president of Pence, was questioned concerning the notice issue, Lucas stipulated that he did not give Pence timely notice of his accident.

Because credible evidence supports the commission's finding that Pence did not receive timely notice of Lucas' accident as required by Code § 65.2-600, the commission did not err in dismissing Pence as a party defendant.

### III.  Lucas' Failure to Appear at Second Hearing

The Fund also contends that the commission erred in not dismissing Lucas' application because he failed to appear at the second hearing on January 12, 1995.  The record shows that the commission informed all parties that the purpose of the second hearing was to resolve the Show Cause Order against Tactical and to take additional evidence on the notice issue.

Lucas stipulated at the first hearing that he did not give timely notice of his accident to Pence.  Thus, because Lucas had no further evidence to offer on the notice issue and the show cause issue did not concern him, Lucas' counsel informed the deputy commissioner that he and Lucas would not appear at the second hearing unless ordered to do so.  If the Fund wanted to take additional evidence from Lucas concerning the notice issue, the Fund could have ensured Lucas' attendance at the second hearing.  The Fund did not request a subpoena, and Lucas did not appear.

9

Based upon this record, we cannot say that the Commission abused its discretion by refusing to dismiss Lucas' application.

For the reasons stated, we affirm the commission's decision.

<u>Affirmed.</u>