COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Senior Judge Hodges
Argued at Norfolk, Virginia


SUSAN ELAINE MAVITY
                                    MEMORANDUM OPINION[*] BY
v.          Record No.  0763-95-1    JUDGE WILLIAM H. HODGES
                                       JANUARY 30, 1996
SUGAR 'N SPICE/GREEN FROG CORPORATION
AND
INSURANCE COMPANY OF NORTH AMERICA


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Stephen Strickler (McCardell & Inman, P.L.C., on
               briefs), for appellant.

               Lisa Frisina Clement (Law Offices of E. Wayne Powell,
               on brief), for appellees.


     Susan E. Mavity (claimant) appeals from an opinion of the

Virginia Workers' Compensation Commission.  She contends that the

commission erred in calculating her average weekly wage to be

$67.24.  We agree and reverse and remand.

     "The reason for calculating the average weekly wage is to

approximate the economic loss suffered by an employee . . . when

there is a loss of earning capacity because of work-related

injury or death."  Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161,

163, 355 S.E.2d 339, 340-341 (1987).  Code § 65.2-101(1)(b)

provides that "[w]hen for exceptional reasons" the general rules

for computing average weekly wage "would be unfair . . . such

other method . . . may be resorted to as will most nearly

          [*]Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

approximate the amount which the injured employee would earn were it not for the injury."  The commission has the duty of making the best possible estimate of future impairments of earnings from the evidence adduced at the hearing, and to determine the average weekly wage that the claimant was able to earn.  Chesapeake Bay Seafood House v. Clements, 14 Va. App. 143, 146, 415 S.E.2d 864, 866 (1992) (citing Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986)).

The claimant had worked for Sugar 'N Spice for only sixteen weeks.  The commission properly found that the average weekly wage could not be determined under the general rule and properly resorted to "such other method of computing the average weekly wage" as would approximate the amount the claimant would have earned but for the injury.

The evidence in this case diverged widely on the issue of claimant's average weekly wage before and after her job-related accident.  Claimant explained that she worked as a waitress and house dancer between March and July 1993.  Claimant often worked more than one eight hour shift per day and often worked seven days per week.  Claimant split her time between the two positions, sometimes spending as much as fifty percent of her time dancing.

Both parties agree claimant earned a base salary of ten dollars per shift.  However, this ten dollar figure was augmented by customers' tips, which were significantly greater when

claimant danced. Claimant kept detailed notes of her tip earnings, which she introduced at the hearing. Claimant figured that she earned an average of $722.75 per week before her injury, based on her total earnings combining base salary plus tips. Claimant calculated that she earned $2,775 in April 1993 and $2,891 in May 1993. Claimant calculated that after her injury on June 8, 1993, her earnings fell to $1,710 in June 1993 and $1,682 in July 1993. According to claimant, employer had no formal system for employees to report their tips, although at the end of every night, employees "tipped out," giving bartenders ten percent of their tips earnings. Employer's bartender asserted that claimant, when "tipping out," gave her over ten dollars only three or four times in sixteen weeks. By implication, this meant claimant earned over $100 per shift on three or four occasions.

Employer provided employee with a W-2 form for 1993, which indicated claimant earned $1,075.95 between March and July 1993. However, the W-2 form merely reflected claimant's base wages, and did <u>not</u> include her tips. As of the deputy commissioner's hearing on June 9, 1994, claimant had not filed her 1993 tax return, but instead had filed for an extension. Other evidence adduced at the deputy commissioner's hearing showed employer wrote a letter to help secure car financing for claimant, in which employer stated claimant earned $1,400 per month, which is approximately $323 per week. Tammy Stocks, claimant's co-worker, testified she herself earned approximately $450 to $500 per week

during May and June of 1993, working five or six nights per week.

We agree with the commission that "the evidence regarding the claimant's average weekly wage cannot be reconciled. If we relied on any one piece of evidence exclusively, the wage could vary between less than $100 per week and $700 per week." However, this Court only upholds the commission's findings regarding a claimant's average wages if the findings are supported by credible evidence. Clements, 14 Va. App. at 146, 415 S.E.2d at 866. Here, the commission did not rely on credible evidence in concluding that the "best evidence of the claimant's average weekly wage" was $67.24 per week, a figure obtained by dividing claimant's W-2 salary figure by sixteen weeks. The commission improperly relied on the W-2 form supplied by employer, which did not reflect tips earned by claimant. Additionally, by the credit letter the employer admitted that claimant earned "in excess of $1400.00 per month." Thus, the "best" evidence is that claimant's average weekly wage was, at a minimum, based on a monthly income of $1400. The commission erred in disregarding the employer's admission.

For these reasons, we reverse and remand the cause to the commission for a re-determination of a weekly wage based on an income of not less than $323 per week.

Reversed and remanded.