COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judge Bray and
          Senior Judge Overton*
Argued at Norfolk, Virginia


MERCY TIDEWATER AMBULANCE SERVICE
                                        OPINION BY
v.    Record No. 1813-98-1    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        MARCH 2, 1999
BERT P. CARPENTER


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               F. Nash Bilisoly (Kelly O. Stokes;
               Vandeventer Black, L.L.P., on briefs), for
               appellant.

               Sidney H. Kelsey, Jr., for appellee.


     In this workers' compensation case, Mercy Tidewater

Ambulance Service (Mercy Tidewater) appeals the commission's

decision amending Bert Carpenter's (claimant) average weekly

wage.  Employer also appeals the commission's finding that

claimant proved a loss of function in his left leg for purposes

of determining permanent partial disability benefits.  For the

following reasons, we affirm in part and vacate in part.

                        I.  BACKGROUND

     On August 31, 1995, claimant suffered a compensable injury

to his back.  Pursuant to a memorandum of agreement signed by the

parties, the commission entered an award on November 16, 1995,

---

*Judge Overton participated in the hearing and decision of
this case prior to the effective date of his retirement on
January 31, 1999 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401, recodifying Code
§ 17-116.01:1.

providing for temporary total disability benefits beginning September 21, 1995, based upon an average weekly wage of $512.99.

At the time of his injury, claimant worked as a paramedic, or emergency medical technician (EMT), for Mercy Tidewater. As an EMT, he provided advanced and basic life support care to patients being transported in an ambulance. Claimant described his job duties as follows:

> As a paramedic working for Mercy we were to provide care regardless of what scale it was. We worked accidents, heart attacks, strokes, that type of thing. We would start IV's, start oxygen therapy, patient assessments. We would give medications as dictated in the field under . . . protocols and most of the time we didn't even have to contact a physician. We would draw blood, we analyze like blood sugars, bandage wounds, gunshots . . . .

Both claimant and his partner also drove the ambulance.

During this same time period, claimant also worked as an unlicensed clinician[1] at Children's Hospital of the King's Daughters (Children's Hospital). As a clinician in the emergency room, claimant's duties included: weighing patients; taking

---

[1]According to claimant, a "licensed clinician" is a licensed practical nurse, and an "unlicensed clinician" is a paramedic. However, both positions carry out the same duties. Claimant testified as follows:

> Q. Do the [licensed practical nurses] and the paramedics, who worked as clinicians at Children's Hospital, perform the same job duties.
> A. Yes, they did.
> Q. And were they supervised by nurses and doctors?
> A. Nurses and doctors, yes.
> Q. And they perform all those job duties in the emergency department, correct?
> A. Yes.

vital signs, including pulse, respiration and blood pressure; drawing blood samples; starting IVs; administering respiratory treatments; assisting with heart monitors; and performing nasal washings and urine catheterizations. Claimant testified that his duties at Children's Hospital were the same as those at Mercy Tidewater. "The only difference was, the patients were smaller [at Children's Hospital] and they were in a hospital setting."

At the time claimant executed the memorandum of agreement, he was unaware that his job at Children's Hospital could be considered as similar employment in computing his average weekly wage. Accordingly, on August 21, 1997, claimant filed an application requesting that the commission retroactively modify his average weekly wage to include his wages from Children's Hospital. Claimant also sought an award of permanent partial disability benefits based upon a five percent rating to his lower left extremity.

In its opinion, the commission found "substantial overlap in the specific duties and skills required of both jobs. The claimant's primary mission for both employers was emergency medical services." As a result, the commission found substantial similarity between the two jobs for the purpose of computing claimant's average weekly wage. Additionally, claimant provided a valid explanation for his delay in seeking a modification of the award and employer failed to show any prejudice. Therefore, applying the doctrine of imposition, the commission retroactively modified claimant's average weekly wage to include his employment at Children's Hospital and changed the amount from $512.99 to

$820.31 per week.  Finally, the commission found that claimant sufficiently established a loss of function in his left leg.

> In the case at bar, Dr. Kerner reported deficits in the claimant's range of motion, and paresthesias.  He also referred to a functional limitation caused by the claimant's leg problem.  The claimant testified to "extreme pain and numbness down the left leg," and stated that the leg "kind of goes out from under me if I don't watch it."

Although the commission concluded that claimant had proved a loss of function in his left leg, it denied permanent partial disability benefits because claimant failed to prove that he had reached maximum medical improvement.

## II.  CLAIMANT'S AVERAGE WEEKLY WAGE

On appeal, employer first argues that the commission erred in finding that claimant's two employments were substantially similar.  Employer contends that while the positions at Mercy Tidewater and Children's Hospital were "medically related," the duties of each job were different and, therefore, claimant's wages at Children's Hospital should not be included when computing his average weekly wage.  We disagree.

The findings of the commission, if based upon credible evidence, are conclusive and binding upon this Court.  See Code § 65.2-706; Falls Church Constr. Co. v. Laidler, 254 Va. 474, 478-79, 493 S.E.2d 521, 524 (1997); Southern Express v. Green, 26 Va. App. 439, 445, 495 S.E.2d 500, 503 (1998).

The commission computes workers' compensation benefits on the basis of the employee's "average weekly wage."  Code

§ 65.2-101.[2]  When an injured employee is disabled from performing his employment duties, the employee's earnings include the earnings from two or more jobs that are "substantially similar."  Frederick Fire and Rescue v. Dodson, 20 Va. App. 440, 443, 457 S.E.2d 783, 784 (1995).  "Virginia follows the majority rule that when an employee is injured on one job while in concurrent employment, the average weekly wage compensated is based on the combined earnings of both jobs if, but only if, the employments are related or similar."  Id. (citing First Virginia Banks, Inc. v. McNeil, 8 Va. App. 342, 343, 381 S.E.2d 357, 358 (1989)).  This rule, also termed the dissimilar employment rule, "is alive and well in workers' compensation law."  Uninsured Employer's Fund v. Thrush, 255 Va. 14, 21, 496 S.E.2d 57, 60 (1998).

The term "similar" in this context may relate to the similarity of:  (1) the work, (2) the industry in which the work is performed, or (3) the degree of hazard to which the employee is exposed.  See generally 5 A. Larson, Workers' Compensation Law § 60.31 (1997).  In determining whether two jobs are "substantially similar," we look to the following:  (1) "the duties and skills" of each job, and (2) "the primary mission" of the employee on each job.  Dodson, 20 Va. App. at 444-45, 457 S.E.2d at 785.  "In every situation where the commission is asked to determine whether two or more jobs are substantially similar,

_____

[2]The Workers' Compensation Act defines average weekly wage as "[t]he earnings of the injured employee in the employment in which he was working at the time of the injury . . . ."  Code § 65.2-101.

- 5 -

the commission must consider not only the particular duties of each job, but also the general nature or type of employment of the two jobs." Creedle Sales Co. v. Edmonds, 24 Va. App. 24, 28, 480 S.E.2d 123, 125 (1997).

In the instant case, the commission found that claimant's jobs at Mercy Tidewater and Children's Hospital had "a substantial overlap in the specific duties and skills . . . ." Claimant testified that he provided "advance life support and basic life support care to patients" at Mercy Tidewater. As a paramedic, he performed patient assessments, started IVs, started oxygen therapy, administered medications according to protocol, drew blood, and bandaged wounds. At Children's Hospital, claimant worked as an unlicensed clinician in the emergency room, taking vital signs, weighing patients, administering oxygen, drawing blood, starting IVs, giving respiratory care, and performing nasal washings and catheterizations. Claimant testified that his duties at Children's Hospital were the same as those at Mercy Tidewater.[3] "The only difference was, the patients were smaller [at Children's Hospital] and they were in a hospital setting."

Moreover, the commission specifically found that "claimant's primary mission for both employers was emergency care services." (Emphasis added). Although the jobs were performed in different settings (i.e., an ambulance versus an emergency room), the

---

[3]Claimant's testimony about his duties at Children's Hospital is further bolstered by the "Job Description" of the unlicensed clinician, which was in the record before the commission.

employments were of the same general class.  Both positions focused on providing emergency care services to patients.  <u>Cf.</u> <u>Dodson</u>, 20 Va. App. at 445, 457 S.E.2d at 785 (finding that emergency medical technician and firefighter-paramedic were of the same general class of "emergency/rescue"); <u>Edmonds</u>, 24 Va. App. at 28-29, 480 S.E.2d at 125 (finding that plumbing/pipe-fitting and mechanic work were of the same "primary mission").

Credible evidence supports the commission's finding that claimant's employment at Children's Hospital was substantially similar to his employment at Mercy Tidewater.  Accordingly, we affirm the commission's conclusion that claimant's two employments were substantially similar for purposes of computing claimant's average weekly wage.  <u>See</u> Code § 65.2-706; <u>Laidler</u>, 254 Va. at 478-79, 493 S.E.2d at 524; <u>Green</u>, 26 Va. App. at 445, 495 S.E.2d at 503.

Next, we address employer's argument that the commission erred in modifying claimant's average weekly wage using the doctrine of imposition.  Employer contends that the evidence failed to establish that claimant was "the victim of an imposition of any kind" and, therefore, should not be entitled to a modification of his average weekly wage.

It is well settled that an employee's average weekly wage, even after being agreed to by the parties and set forth in an award of the commission, is subject to modification upon the grounds of fraud, misrepresentation, mistake or imposition.  <u>See</u> <u>John Driggs Co. v. Somers</u>, 228 Va. 729, 734, 324 S.E.2d 694, 697

(1985); <u>Collins v. Dept. of Alcoholic Beverage Control</u>, 21 Va. App. 671, 679-80, 467 S.E.2d 279, 283, <u>aff'd on reh'g en banc</u>, 22 Va. App. 625, 472 S.E.2d 287 (1996).  It is immaterial whether the mistake of fact is mutual or unilateral.  <u>See</u> <u>Collins</u>, 21 Va. App. at 680, 467 S.E.2d at 283.

We need not decide whether the commission erroneously applied the doctrine of imposition.  It is clear on this record that the commission correctly modified claimant's average weekly wage.  Thus, even if the commission incorrectly applied the doctrine of imposition, it reached the right result.  <u>See</u> <u>Granados v. Windson Dev. Corp.</u>, ___ Va. ___, ____, ____ S.E.2d ___, ____ (1999) ("Since the Commission reached the correct conclusion in denying benefits to [claimant], although it gave the wrong reason, we sustain that conclusion and assign the right ground set forth above."); <u>Robbins v. Grimes</u>, 211 Va. 97, 100, 175 S.E.2d 246, 248 (1970) ("We do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground."); <u>Beverly Health and Rehab. Serv., Inc. v. Metcalf</u>, 24 Va. App. 584, 596, 484 S.E.2d 156, 162 (1997).

The commission held that claimant sufficiently explained his delay in requesting a modification.  Claimant testified that at the time he executed the memorandum of agreement, he was unaware that his job at Children's Hospital could be considered as similar employment for purposes of computing his average weekly wage.  We hold that under these circumstances, there was a mutual mistake of fact as to claimant's average weekly wage.

"In determining whether a mutual mistake of fact existed at the time of the agreement, the inquiry is not, . . . who initially made the mistake, but rather, whether each party held the same mistaken belief with respect to a material fact at the time the agreement was executed." Collins, 21 Va. App. at 681, 467 S.E.2d at 283.

In the instant case, the parties initially agreed to an average weekly wage of $512.99. At the time the parties entered the memorandum of agreement, employer was unaware of claimant's job with Children's Hospital. Similarly, claimant was unaware that his concurrent employment could be used in calculating his average weekly wage. In essence, both employer and claimant "held the same mistaken belief" that the average weekly wage figure of $512.99 correctly approximated the economic loss suffered by claimant. Collins, 21 Va. App. at 681, 467 S.E.2d at 283. Had employer been aware that claimant held concurrent employment with Children's Hospital,[4] or had claimant known that his concurrent employment could be used in computing his average weekly wage, the parties may have taken different positions on the question of claimant's average weekly wage. Because a mutual mistake of fact existed at the time the parties entered into the memorandum of agreement, we affirm the commission's modification of claimant's average weekly wage.

_____

[4]The fact that employer might initially have contested use of wages earned at Children's Hospital does not establish the absence of mistake on employer's part. The "mistake of fact" on employer's part was its lack of knowledge of a relevant fact or consideration affecting calculation of claimant's average weekly wage, not the position it would assert when that fact became known.

### III.  PERMANENT PARTIAL DISABILITY

Employer next argues that the commission erred in finding that claimant sufficiently established a loss of function to his left leg, even though it denied benefits because claimant failed to establish that he reached maximum medical improvement.  We hold that because claimant failed to show that he had reached maximum medical improvement, the commission was precluded from determining claimant's permanent loss of function.  See Rusty's Welding Serv., Inc. v. Gibson, ___ Va. App. ___, ___ S.E.2d ___, ___ (1999) (en banc).  "Until the deputy or commission received medical evidence that the injured employee attained maximum medical improvement, the deputy was without authority to make an award for permanent injury."  Id. (citing County of Spotsylvania v. Hart, 218 Va. 565, 568, 238 S.E.2d 813, 815 (1977)).

In the present case, claimant failed to establish both prongs necessary for an award of permanent partial disability benefits (i.e., a ratable loss of function and that he had reached maximum medical improvement).  Thus, while the issue of permanent partial disability was addressed by the commission, any actual finding of permanent impairment or functional loss was premature.  Accordingly, we vacate the commission's finding, and the issue is left open for future determination.

Affirmed in part, vacated in part.