Tuesday                    12th

July, 2005.


Yvonne E. Tate,                                                                 Appellant,

 against          Record No. 2282-03-2
                  Claim No. 198-42-59

United Parcel Service and
 Liberty Mutual Fire Insurance Company,                          Appellees.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank, Humphreys,
Clements, Felton, Kelsey, McClanahan and Haley


Gregory S. Hooe (B. Mayes Marks, Jr.; Marks and Associates, P.C., on
briefs), for appellant.

Michele A. Mulligan (R. Ferrell Newman; Childress, Gould & Russell,
P.C.; Thompson, Smithers, Newman & Wright, L.L.P., on briefs), for
appellees.


By memorandum opinion dated August 10, 2004, a divided panel of this Court affirmed the

decision of the Virginia Workers' Compensation Commission. On September 14, 2004, we stayed the

mandate of that decision and granted rehearing *en banc*.

Upon rehearing *en banc*, it is ordered that the stay of the September 14, 2004 mandate is lifted,

and the decision of the Workers' Compensation Commission is affirmed for the reasons set forth in the

panel decision.

_____

Benton, J., dissenting.

In an opinion dated December 27, 2001, a deputy commissioner awarded benefits to Yvonne E.

Tate, finding that "the nature of the work [Tate] performed was sufficiently similar in the two

employments [held at the time of her injury] as to permit combining of the wages for determining the average weekly wage." On the employer's appeal from that decision, the commission rendered an opinion on July 12, 2002 that facially contains a significant clerical error or clerical misprision. Indeed, the commission tacitly acknowledged this to be the case, when, in the order from which this appeal arises, the commission ruled as follows:

> [W]e recognize that the July 12, 2002, Commission Opinion is less than clear. The finding in the body of the Opinion is not consistent with a total affirmation of Deputy Commissioner Stevick's December 27, 2001, Opinion. The opening paragraph did not state the outcome of the Opinion. The Opinion did not vacate the lower award, nor enter an amended award to clearly illustrate the appropriate average weekly wage. Lastly, as noted by the claimant, the sentence, "[f]or the reasons stated, the Opinion of the deputy commissioner is AFFIRMED," can be interpreted to affirm the lower Opinion in its entirety. More significantly, the text of the Opinion quite clearly and completely explained, from pages 7 through 8, that the two jobs were dissimilar and that the average weekly wages should not be combined.

Ruling, however, that its "July 12, 2002 opinion is final and not subject to review," the commission "decline[d] the . . . invitation to issue a corrected opinion." I would hold that the commission erred.

The Supreme Court long ago adopted the rule

> that a court has inherent power to correct any clerical error or misprision in the record so as to cause its acts and proceedings to be set forth correctly; that this power may be exercised . . . when it appears to the court that the justice and truth of the case require it; and that in allowing the amendment the court may act on any competent evidence.

Council v. Commonwealth, 198 Va. 288, 292, 94 S.E.2d 245, 248 (1956). The Supreme Court has continued to affirm the vitality of this rule. See Jefferson v. Commonwealth, 269 Va. 136, 140, 607 S.E.2d 107, 110 (2005); Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996).

In a similar vein, the Supreme Court has recognized the commission's authority to correct errors in its awards.

> [I]t seems far more consonant with the spirit and purposes of the Act to say that the General Assembly intended that the same tribunal which was empowered to hear in a summary manner claims for compensation, was likewise authorized and empowered to determine in a similar manner

-2-

whether one of its awards should be vacated and set aside on the ground that it had been procured through . . . mistake.

Accordingly, we hold that the . . . Commission has the implied power, incidental to those expressly granted, to entertain and hear an application, seasonably presented, to vacate and set aside an award procured through . . . mistake.

Harris v. Diamond Const. Co., 184 Va. 711, 721, 36 S.E.2d 573, 577-78 (1946). This principle enables the commission to exercise inherent authority "to do full and complete justice in each case" so as to "protect itself and its awards from . . . mistake." Id. at 720, 36 S.E.2d at 577. See also Bader v. Norfolk Redev. & Hous. Auth., 10 Va. App. 697, 702, 396 S.E.2d 141, 144 (1990) (holding that "[i]n addition to its statutorily granted powers, the commission also has incidental powers which are reasonably implied as a necessary incident to its expressly granted powers for accomplishing the purposes of the Workers' Compensation Act").

In this case, the commission plainly found that its July 12, 2002 opinion expressly concluded that "the Opinion of the deputy commissioner is AFFIRMED," that the deputy commissioner read the text of the opinion and reached a contrary result, and that the opinion had patent defects. In short, by the commission's own finding, the opinion contained errors that caused the opinion and "the . . . record to fail to 'speak the truth.'" Zhou v. Zhou, 38 Va. App. 126, 133, 562 S.E.2d 336, 339 (2002). Absent an accurate and corrected decision from the commission, we cannot decide the merits of this appeal.

For these reasons, I would hold that the commission erred in failing to correct the July 12, 2002 opinion. Therefore, I would reverse the commission's decision and remand this case to the commission for further proceedings.

_____

This order shall be certified to the clerk of the Virginia Workers' Compensation Commission.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-3-

Tuesday              14th

September, 2004.

Yvonne E. Tate,                                                    Appellant,

 against          Record No. 2282-03-2
                    Claim No. 198-42-59

United Parcel Service and
  Liberty Mutual Fire Insurance Company,                         Appellees.

Upon a Petition for Rehearing En Banc

Before the Full Court

On August 23, 2004 came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on August 10, 2004, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on August 10, 2004 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Clements and McClanahan
Argued at Richmond, Virginia


YVONNE E. TATE

MEMORANDUM OPINION[*] BY
v.        Record No. 2282-03-2         JUDGE ELIZABETH A. McCLANAHAN
                                        AUGUST 10, 2004
UNITED PARCEL SERVICE AND
 LIBERTY MUTUAL FIRE INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

B. Mayes Marks, Jr. (Marks and Williams, P.C., on brief),
for appellant.

Michele A. Mulligan (R. Ferrell Newman; Thompson, Smithers,
Newman, Wade & Childress, L.L.P., on brief), for appellees.


Yvonne Tate appeals a decision of the Workers' Compensation Commission.  She

contends that the commission erred by rejecting and declining to correct its July 12, 2002

opinion, and, in doing so, violated her due process rights.  She also appeals the commission's

decision that the average weekly wages from her two jobs should not be combined for the

purpose of determining her compensation benefits.  For the reasons that follow, we affirm the

commission.

I.  Background

Claimant was employed in two jobs at the time of her accident.  She worked full time for

the Department of the Army in the Civilian Personnel Office at Fort Lee, as a personnel assistant.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

She also worked part time for the United Parcel Service ("UPS or "employer"), where she was employed as a clerk.

On August 30, 1999, claimant was injured at her UPS job when a package fell on her arm. She started receiving benefits, without an agreement, from UPS's insurance carrier, Liberty Mutual. In August 2000, claimant filed a claim for benefits seeking amendment of her average weekly wage. She asserted that because her job with UPS and her job with the Army were substantially similar, her wages from each job should be combined for purposes of determining her average weekly wage.

The application was heard by a deputy commissioner on December 4, 2001. The evidence included the responsibilities and job description for each position. The deputy commissioner entered an opinion on December 27, 2001, finding that claimant's job at UPS involved processing packages at a computer. If a package label was incorrect, she entered the correct information into the computer and moved the package to a conveyor belt. Claimant said she did some lifting of packages, but worked primarily at the computer. The deputy commissioner found that claimant's second job, with the Army's Civilian Personnel Office, involved extracting information from personnel folders and entering that information into a computer. At both jobs, the claimant also answered the telephone and dealt with incoming mail. The deputy commissioner held that claimant had established similar employment in her two positions in that they both primarily entailed data entry. The deputy commissioner held that the wages from each job should be combined for determining the average weekly wage. UPS requested review by the full commission.

After a review of the record and written statements of the parties, the commission released an opinion on July 12, 2002, finding that "claimant's work with both employers was not sufficiently similar to justify combining their wages." While it stated that both positions

"primarily involved entering and retrieving data from a computer system," it found that the primary mission of each of the jobs was not substantially similar. The commission found that the primary mission of claimant's job with the Army was abstracting personnel files, while the primary mission of claimant's job with UPS was assisting in the shipping of packages. The commission stated, "Given the prevalence of computer databases in modern employment, we find that the mere entry and retrieval of information into computer databases cannot make two jobs substantially similar. Accepting the claimant's argument that such jobs are substantially similar would render this term meaningless." The last sentence of the commission's analysis on an unrelated issue read, "For the reasons stated, the Opinion of the deputy commissioner is AFFIRMED." Neither party appealed the commission's decision.

Employer paid indemnity benefits based only on the average weekly wage of the UPS job. In August 2002, claimant filed a request for a twenty percent penalty pursuant to Code § 65.2-524, allowing such penalty for all indemnity benefits not paid after fourteen days. Claimant based her request on her contention that the benefits were ordered by the deputy commissioner and affirmed by the commission's July 12, 2002 opinion. A deputy commissioner heard claimant's request on January 6, 2003.

Claimant argued that the commission's July 12, 2002 opinion affirmed the deputy commissioner's opinion in its entirety, including that the wages from both jobs should be combined in order to determine the average weekly wage. Employer contended that the commission's opinion found that claimant's work with the two employers was not similar and should not be combined for purposes of determining the average weekly wage.

On January 30, 2003, the deputy commissioner refused claimant's request to penalize employer twenty percent for not paying her benefits based on combined wages. The deputy commissioner relied on the language of the commission's July 12, 2002 order stating that

claimant's work with the two employers was not sufficiently similar. Claimant requested review by the full commission arguing that the deputy commissioner improperly relied on the language of the opinion, rather than its final conclusion. Claimant also filed a motion asking the commission to clarify the July 12, 2002 opinion.

On July 31, 2003, the commission held that its July 12, 2002 opinion was final and not subject to review. It recognized that the opinion was "less than clear" in that the "finding in the body of the opinion is not consistent with a total affirmation of Deputy Stevick's December 27, 2001 Opinion." While it declined to correct the opinion, it found that the text of the opinion "quite clearly and completely explained . . . that the two jobs were dissimilar and that the average weekly wages should not be combined."

Claimant has appealed on four grounds. First, the commission erred by rejecting its July 12, 2002 ruling. Second, that the commission erred in declining to correct its July 12, 2002 opinion. Third, that the commission denied claimant's due process rights by declining to correct the July 12, 2002 opinion. And, fourth, that the commission erred in holding that claimant's work with the two employers was not sufficiently similar in order to combine wages for determining the average weekly wage. Employer contends that the commission correctly interpreted its own order finding that claimant's jobs were not sufficiently similar and that the commission did not err in that finding.

## II. Analysis

### 1.

Claimant argues that the commission erred by "rejecting" its July 12, 2002 opinion. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003) (citation and internal quotation marks omitted); Rule 5A:20(e) (requiring appellants to brief the

"principles of law, the argument, and the authorities relating to each question presented"). Having presented no citations or authority in her brief in support of this question, it does not merit appellate review. See Rule 5A:20(e).

2.

Claimant argues that the commission erred in declining to clarify its July 12, 2002 opinion. With respect to this question, she argues first, that the commission must vacate and set aside the award on the basis of mistake, and second, that the commission must issue a clarified opinion *nunc pro tunc* if an opinion is found to be unclear. We disagree.

A. Whether the Commission Must Vacate and Set Aside Its Opinion Based on Mistake

Claimant first relies upon Harris v. Diamond Constr. Co., 184 Va. 711, 721, 36 S.E.2d 573, 577 (1946), to argue that the commission retains authority to "protect its awards from fraud, imposition, [or] *mistake*" even if neither party timely notes an appeal and the opinion becomes final. (Emphasis added.) In Harris, the Supreme Court stated, "the [workers' compensation] Commission has the implied power, incidental to those expressly granted, to entertain and hear an application, seasonably presented, to vacate and set aside an award procured through fraud or mistake." Id. at 721, 36 S.E.2d at 578. Claimant contends that the commission should have utilized such power to correct the July 12, 2002 opinion in order to "make the record speak the truth." Sch. Bd. of Lynchburg v. Caudill Rowlett Scott, Inc., 237 Va. 550, 554, 379 S.E.2d 319, 322 (1989) (internal quotation marks and citation omitted).

While Harris *allows* the commission to correct orders on the basis of fraud or mistake, it does not *require* the commission to do so. Moreover, claimant has never argued that the July 12, 2002 order was procured by fraud or mistake. Rather, claimant has argued either that (1) the commission's July 12, 2002 opinion affirmed the deputy commissioner's opinion in its entirety, or, (2) that the commission should vacate the July 12, 2002 opinion and issue an amended

-5-

opinion for clarification. Accordingly, we will not consider for the first time on appeal that the commission erred in refusing to vacate and set aside its July 12, 2002 opinion on the ground that it was procured by mistake. See Rule 5A:18. Moreover, the record does not reflect, nor has claimant argued, any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

B. Whether the Commission Must Issue a Clarified Opinion, *Nunc Pro Tunc*

We find no merit in claimant's second argument on this question, that the commission erred in failing to issue*, nunc pro tunc*, an amended or corrected July 12, 2002 opinion. Claimant cites no authority, and we find none, to support her contention that the commission must issue a clarified opinion *nunc pro tunc* if an opinion is found to be unclear.

It is within the commission's discretion to interpret its own orders. "[T]he commission is entitled to interpret its own orders in determining the import of its decisions." Lowes of Christiansburg v. Clem, 37 Va. App. 315, 323, 557 S.E.2d 745, 748 (2002) (quoting Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 130, 510 S.E.2d 255, 260 (1999) (*en banc*)). In Rusty's Welding Service, we held "that it is within the commission's discretion to reach beyond the confines of the ultimate paragraph of the deputy commissioner's opinion and to examine the opinion of the deputy commissioner as a whole in order to ascertain the result intended." 29 Va. App. at 130, 510 S.E.2d at 260-61. "Furthermore, when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court." Id. at 129, 510 S.E.2d at 260. We defer to the commission's interpretation absent an abuse of discretion.

Here, we see no abuse of discretion in the commission's interpretation of its July 12, 2002 opinion. The language in the body of the opinion, where the commission analyzed and discussed the issue of whether the wages of claimant's two jobs should be combined for the

-6-

purposes of average weekly wage, was clear and unambiguous. The commission, in reading its own opinion, could reasonably conclude that its sentence affirming the deputy commissioner's opinion pertained only to the deputy commissioner's ruling on the vocational rehabilitation issue.

In any event, if claimant believed that the commission's July 12, 2002 opinion was ambiguous and required clarification, she could have filed a timely motion for reconsideration and/or clarification with the commission, or filed an appeal on this issue from that opinion to this Court. She did neither, and the July 12, 2002 opinion became final.

3.

Claimant argues that the commission denied her due process rights by declining to correct the July 12, 2002 opinion. Claimant did not raise this issue before the commission. Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Moreover, the record does not reflect, nor has claimant argued, any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

4.

Claimant argues that the commission erred in finding that claimant's jobs were not substantially similar. She asserts that because the commission found that her two jobs "primarily involved entering and retrieving data from a computer system," it should conclude that, from a duties standpoint, the two positions were essentially the same. Instead, the commission found that "the primary mission" of each of claimant's jobs was not substantially similar. Claimant contends that the commission misapplied the required legal standard by focusing on the primary mission of the employer and not that of the employee.

"On appeal, we view the evidence in the light most favorable to the party prevailing below." Tomes v. James City (County Of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002). "If supported by credible evidence, the factual findings of the commission are binding

-7-

on appeal." Id. at 430, 573 S.E.2d at 315 (citing Code § 65.2-706(A)).  This is so "even though there is evidence in the record to support a contrary finding."  Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986) (citations omitted).  "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses."  Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted).  However, "we review questions of law *de novo*."  Rusty's Welding Serv., 29 Va. App. at 127, 510 S.E.2d at 259.

The commission computes workers' compensation benefits on the basis of the employee's "average weekly wage."  The Workers' Compensation Act defines average weekly wage as "the earnings of the injured employee in the employment in which he was working at the time of the injury."  Code § 65.2-101.  This Court has interpreted the statute to mean that when an injured employee is disabled from performing his employment duties, the employee's earnings include the earnings from two or more jobs that are "substantially similar."  Frederick Fire and Rescue v. Dodson, 20 Va. App. 440, 443, 457 S.E.2d 783, 784 (1995).  "Virginia follows the majority rule that when an employee is injured on one job while in concurrent employment, the average weekly wage compensated is based on the combined earnings of both jobs if, but only if, the employments are related or similar."  Id. (citing First Virginia Banks, Inc. v. McNeil, 8 Va. App. 342, 343, 381 S.E.2d 357, 358 (1989)).  In Dodson, this Court relied on a New York case in which an award was affirmed upon a finding that a claimant's jobs working one day per week as a private maid and cleaning a beauty shop were sufficiently similar to justify combining the wages.  The New York court found that claimant's principal work at both jobs was cleaning.  Based on the New York case, this Court found that a "general class

-8-

employment analysis" was instructive in helping to narrow the focus of the comparison of the two employments. Dodson, 20 Va. App. at 444, 457 S.E.2d at 785. We said,

> Where, in cases like this one, all of a claimant's duties and skills in one job are utilized in the other job, which has a wider scope of employment, the general class of employment approach, focusing on the primary mission of an employee in both jobs, provides a more rational analysis for determining whether two employments are so related as to conclude they are substantially similar.

Id. at 445, 457 S.E.2d at 785. Therefore, in deciding whether two jobs are "substantially similar," for purposes of computing a claimant's average weekly wage, the following must be determined: (1) whether all "the duties and skills" of one job are utilized in the job that has the wider scope of employment, and (2) "the primary mission" of the employee on each job. Id. at 444-45, 457 S.E.2d at 785. "In every situation where the commission is asked to determine whether two or more jobs are substantially similar, the commission must consider not only the particular duties of each job, but also the general nature or type of employment of the two jobs." Mercy Tidewater Ambulance Serv. v. Carpenter, 29 Va. App. 218, 224, 511 S.E.2d 418, 421 (1999) (quoting Creedle Sales Co. v. Edmonds, 24 Va. App. 24, 28, 480 S.E.2d 123, 125 (1997)).

In this case, the commission considered both the particular duties of each of claimant's jobs and the general nature or type of employment of the jobs. While it found that claimant entered and retrieved data into a computer system in each job, it recognized that some of claimant's duties in each job did not overlap. It looked at what the *claimant's* primary mission was for each employer. It found, "The primary mission of *her job* with the Army is found to be abstracting personnel files while the primary mission of *her job* with UPS is found to be assisting the shipping of packages." (Emphases added.) Claimant did not ship packages for the Army, nor did she abstract personnel files for UPS. The commission did not look at the primary

-9-

missions of UPS and the Army.  We find that the commission correctly applied the legal standard of <u>Dodson</u>.  Accordingly, we affirm the decision of the commission.

III.  Conclusion

For the foregoing reasons, we affirm the decision of the Virginia Workers' Compensation Commission.

<u>Affirmed.</u>

Annunziata, J., concurring, in part, and dissenting, in part.

I concur in the majority's analysis with respect to Parts II.1-3. I respectfully disagree, however, with the majority's decision in Part II.4 to affirm the commission's determination that claimant's jobs were not substantially similar.

The commission determined as a fact that, "[i]n her full time job with the Army[,] the claimant prepared abstracts of files and entered and retrieved information into a computer. In her position at UPS, the claimant also entered and inputted data into a computer system." Despite the similarity in job duties, the commission found that the claimant's jobs were not substantially similar. The commission's conclusion that the claimant's jobs were not substantially similar was based on its finding that "[t]he primary mission of her job with the Army is . . . abstracting personnel files while the primary mission of her job with UPS is . . . assisting the shipping of packages." Its conclusion was further explained by noting that it could not "find that the mere entry and retrieval of information into computer databases" makes "two jobs substantially similar" because adopting such a position would "render this term ['substantially similar'] meaningless" considering "the prevalence of computer databases in modern employment."

I note first that the evidence presented describing claimant's two jobs establishes by a clear preponderance that they are substantially similar. In her job with UPS, claimant testified, without contradiction, that her primary duties entailed entering data from shipping labels into a computer. She verified the information on the labels by entering it into a computer and cross-checking it against a UPS database. "If the labels were incorrect, I had to . . . find the information, put it on the package, [and] take the package to the conveyor belt for the delivery of the next business day." If the correct information could not be found in the database, she "would either postcard the package or . . . would return the package back to the shipper." Both "postcarding" and returning the package "back to the shipper" required entering more data into a

computer. Depending on the "disposition" of the packages, she would either place them "to the side" or place them on a conveyor belt. She repeated this process for each package. Although she spent "most" of the time entering data from the shipping labels into the computer, she also performed some secretarial tasks, such as "answering the telephone [and] directing calls to other supervisors or managers."

Claimant described her duties as a personnel assistant with the Army as "similar" to her duties with UPS. Evidence to the contrary was not presented. In her job with the Army, claimant "abstract[ed] information" from personnel files, entered that information into a computer, and, at times, retrieved such information "out of the system." She repeated this data entry and retrieval process "all day." Claimant performed some secretarial duties as well, such as "answering the phone, directing calls to other managers and supervisors[,] and . . . [going] to the mail room and distribut[ing] the mail to the different departments." When asked to summarize the differences between her two jobs, claimant stated, "It's not a lot of difference. I'm at the computer abstracting the data and inputting data in the computer all day."

Claimant's testimony, which was unrebutted, established that she entered data into computers and performed nearly identical secretarial tasks in both jobs. Accordingly, the commission properly determined as a fact that claimant inputted data into computers at both jobs. We are bound by that determination because it is supported by credible evidence. See Mercy Tidewater Ambulance Serv. v. Carpenter, 29 Va. App. 218, 223, 511 S.E.2d 418, 420 (1999). It follows therefore that, on this record, the commission had before it sufficient, credible evidence that the claimant's jobs were substantially similar.

However, the commission also determined that claimant's "primary missions" were dissimilar and, on that ground, denied her request to combine the two jobs in setting her average weekly wage. I would hold that the commission's conclusion is legally erroneous, see Atlas

-12-

Plumbing and Mech., Inc. v. Lang, 38 Va. App. 509, 513, 566 S.E.2d 871, 873 (2002) (noting that this Court is not bound by the commission's legal determinations), because dissimilar "primary missions" do not prevent a finding of substantial similarity where the claimant's job duties are the same. I would therefore reverse the decision and direct on remand that an award be entered reflecting the claimant's average weekly wage from both jobs.[1]

At the outset, it is instructive to note where the term "primary mission" originated and how it was applied in Virginia case law. The term was first used in Frederick Fire and Rescue v. Dodson, 20 Va. App. 440, 457 S.E.2d 783 (1995), where we considered employer's appeal from a decision of the commission and found that the claimant's two employments were substantially similar despite the fact that she did not have the same duties in each job. Id. at 442, 457 S.E.2d at 784. The claimant "was employed part-time as a 'fire-medic' for the Frederick County Fire and Rescue Department." Id. At the same time, she was employed full-time as a "cardiac technician and emergency room nurse with the Prince William Hospital." Id. She suffered an injury "to her right knee while fighting a brush fire" in her capacity as a fire-medic with the fire department. Id. In determining the benefits to which the claimant was entitled as a result of her injury, the commission considered her wages from both jobs in setting her "average weekly wage" because it found them to be substantially similar. Id. This Court affirmed the commission, rejecting employer's argument that, because her job as a fire-medic involved certain

---

[1] It is well-settled in Virginia that

> workers' compensation benefits are computed on the basis of the employee's "average weekly wage." Code § 65.2-101. Virginia follows the majority rule that when an employee is injured on one job while in concurrent employment, the average weekly wage compensated is based on the combined earnings of both jobs if, but only if, the employments are related or similar.

Frederick Fire and Rescue v. Dodson, 20 Va. App. 440, 443, 457 S.E.2d 783, 784 (1995).

duties that her job at the hospital did not, the two jobs were not substantially similar. Id. at 443, 457 S.E.2d at 784. In reaching the conclusion that Dodson's jobs were substantially similar, we stated that, when comparing two employments with some duties and skills in common and some unrelated, "the general class of employment approach, focusing on the primary mission of an employee in both jobs, provides a more rational analysis for determining whether two employments are so related as to conclude they are substantially similar." Id. at 445, 457 S.E.2d at 785. We determined that the evidence established Dodson's "primary mission" in both employments "was emergency medical services" and, therefore, found her jobs to be substantially similar even though she did not perform precisely the same duties in each job. Id. Thus, the term "primary mission" was used in Dodson to *expand* the definition of substantial similarity to encompass those circumstances where the claimant's jobs are of the "same general class" although the duties performed in those jobs are not the same. Id. Dodson did not hold or suggest that dissimilar primary missions preclude a finding of substantial similarity.

Furthermore, nothing in subsequent case law suggests that dissimilar primary missions preclude a finding of substantial similarity. For example, in Carpenter we said that, "[i]n determining whether two jobs are 'substantially similar,' we look to the following: (1) 'the duties and skills' of each job, and (2) 'the primary mission' of the employee on each job." Carpenter, 29 Va. App. at 224, 511 S.E.2d at 421. Although Carpenter stated that this Court "looks" to both the duties and primary mission of each job, it did not establish that both the duties *and* the primary mission must match before a finding of substantial similarity can be made. Such a holding would have run counter to the original intent of the term "primary mission" to expand the definition of substantial similarity. See Dodson, 20 Va. App. at 445, 457 S.E.2d at 785.

-14-

Indeed, this Court in <u>Creedle Sales Co., Inc. v. Edmonds</u>, 24 Va. App. 24, 480 S.E.2d 123 (1997), specifically found substantial similarity even though the claimant's primary missions were dissimilar. In that case, we considered whether the commission erred in finding that the claimant's jobs with Creedle Sales, for whom he "prepar[ed] used cars for resale," and C.C. Powell & Sons, for whom he worked as a plumber, were substantially similar and warranted combining the two for purposes of determining his average weekly wage. <u>Id.</u> at 26, 480 S.E.2d at 124. Although the claimant spent most of his time at Creedle Sales "changing batteries, hoses, and fan belts, checking transmissions, and doing minor auto repairs," he performed some plumbing work as well. <u>Id.</u> Similarly, at C.C. Powell & Sons, the claimant performed some "'mechanical work and service work [and] [] maintenance on the trucks'" if the "'work was caught up on the plumbing.'" <u>Id.</u> Based on this evidence, the commission found that the claimant's jobs were substantially similar. <u>Id.</u> at 27, 480 S.E.2d at 124. In support of its decision, the commission also found that the claimant's primary mission at Creedle "was that of a plumber/pipe fitter" despite evidence clearly establishing that he spent most of his time performing mechanical work on used cars, not plumbing. <u>Id.</u> at 28, 480 S.E.2d at 125.

Although we affirmed the commission's finding of substantial similarity, we noted in <u>Creedle</u> that the commission misconstrued the meaning of the term "primary mission" and incorrectly found that the claimant's primary mission at Creedle was plumbing.[2] <u>Id.</u> We reminded the commission that "[t]he language ['primary mission'] was intended to focus upon the scope or general nature of a person's employment and to recognize that an employee's

---

[2] The evidence established that the claimant worked eight and one-half weeks with Creedle, of which he spent "'a week or two' doing plumbing work." <u>Creedle</u>, 24 Va. App. at 26, 480 S.E.2d at 124. Thus, the claimant spent approximately one-eighth of his time at Creedle doing plumbing work.

'primary mission' may involve several responsibilities."[3] Id. We thus informed the commission that it need not find similar primary missions in order to find substantial similarity where the primary missions, although different, involved essentially the same duties. See id. "[H]ere," we stated, "the claimant's 'primary mission' in both jobs entailed significant duties as a mechanic and as a plumber/pipe fitter." Id. Because the claimant's duties were the same in both jobs, we held unequivocally that "[t]he claimant's . . . job with Creedle was substantially similar to his . . . job with Powell." Id. at 29, 480 S.E.2d at 125.

The same conclusion can, and should, be drawn in the instant case. The claimant's primary mission in each job entailed significant duties entering and retrieving data from a computer. See id. at 28, 480 S.E.2d at 125. That the claimant's primary mission in each job may have been different is of no significance.

As demonstrated above, a finding of dissimilar primary missions has never served, under Virginia law, as a basis to preclude a finding of substantial similarity. In fact, the use of the term "primary mission" to such effect runs counter to its original, intended use as a tool to expand the definition of substantial similarity to those circumstances where the claimant's duties and skills in concurrent employment are not wholly correspondent. The majority's decision, however, signals the commission that a finding of dissimilar primary missions precludes a finding of substantial similarity even where the duties and skills required to perform the jobs in question are

---

[3] We further stated that "Dodson does not represent a new or different approach to determining whether two jobs are substantially similar. Instead, Dodson merely holds that, if the two jobs are of the same general class or nature, the wages may be combined even though all the duties of each job are not identical." Id. at 27, 480 S.E.2d at 125.

the same.  Such a result does not comport with this Court's precedents, the remedial purposes of

the Act,[4] or, indeed, our holding in <u>Creedle</u>.  I must, therefore, respectfully dissent.

---

[4] This Court liberally construes the Workers' Compensation Act "to carry out its humane and remedial purposes of affording compensation to employees who suffer accidental injuries resulting from hazards in the work environment."  <u>Frey v. Gunston Animal Hosp.</u>, 39 Va. App. 414, 421, 573 S.E.2d 307, 310 (2002).  Fulfilling the purpose and policy of the Act "to compensate employees when they lose an opportunity to engage in work after suffering work-related injuries" can only be accomplished by combining the claimant's wages from both of her employments.  <u>Roberston v. E. I. DuPont de Nemours & Co.</u>, 38 Va. App. 785, 787, 568 S.E.2d 436, 437 (2002).