COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Senior Judge Bumgardner
Argued at Alexandria, Virginia


KIMBERLY R. WATERS

MEMORANDUM OPINION[*] BY
v.        Record No. 1802-11-4            JUDGE ROBERT P. FRANK
                                          APRIL 24, 2012
TGI FRIDAY'S AND INDEMNITY INSURANCE
 COMPANY OF NORTH AMERICA


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

John B. Delaney (Delaney, McCarthy & Colton, P.C., on briefs), for
appellant.

Steven T. Billy (Billy & Seli, P.C., on brief), for appellees.


Kimberly R. Waters, claimant, appeals a decision of the Virginia Workers' Compensation

Commission (commission), modifying her average weekly wage from $1,295.11 to $798.31.

Claimant also contends the commission erred in finding that employer is entitled to a credit for

overpayment. For the reasons stated, we affirm the decision of the commission.

PROCEDURAL HISTORY

Claimant, a waitress at TGI Friday's, suffered a compensable work injury on June 11,

2006. The parties filed and signed an agreement to pay benefits form with the commission on

March 29, 2007 which indicated a pre-injury average weekly wage of $1,295.11 and resulting in

a compensation rate of $736. The average weekly wage was based solely on claimant's wages at

a Tysons Corner location and did not include unreported tips. The commission entered the

award on April 16, 2007.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Employer filed an application to vacate the award on March 9, 2009. The deputy commissioner entered an order finding no mutual mistake of fact and denying employer's request to amend the award. In an opinion dated October 14, 2010, a majority of the full commission reversed the deputy and held:

> We find clear and convincing evidence of a mistake in the calculation of the claimant's average weekly wage. Defendant's Exhibit 2D reflects that the claimant's earnings including tips as reported to the employer from January 1, 2006 through June 12, 2006 totaled $10,360.89. A handwritten note on this document divided her total earnings by 8 weeks to find [$]1,295.11, even though the claimant had worked 19 weeks in 2006. The Agreement to Pay Benefits executed by the parties provided that the claimant would receive temporary total disability benefits in the amount of $736 based upon a pre-injury average weekly wage of $1,295.11. We do not ignore the testimony that the claimant provided the insurer with documentation of additional tips earned. However, a mistake was clearly made in calculating the claimant's average weekly wage as $1,295.11 which represents the claimant's total earnings divided by 8 weeks instead of the 19 weeks that the claimant worked in 2006. It cannot simply be a coincidence that this is the same figure used in the Agreement to Pay Benefits. We further note that the claimant herself alleged that she under-reported her tips to her employer. Since the $1,295.11 calculation was based upon the amounts reported to the employer, the claimant must concede that the $1,295.11 calculation was based upon inaccurate data. (footnote omitted)

The commission remanded the matter to the deputy commissioner to determine the correct average weekly wage.

On October 28, 2010, the deputy commissioner instructed the parties to submit written statements, but advised that there was no need to submit new evidence. On November 9, 2010 the employer requested an evidentiary hearing, which was denied. The deputy commissioner closed the record on November 23, 2010.

Employer argued to the deputy that more evidence was needed to show claimant's fraud and lack of credibility. The employer also claimed various problems with claimant's tax returns.

Claimant argued that her weekly wages should be $1,295.11. She contended that the adjuster lost her "tip sheets" and that her taxes were filed without benefit of documentation.

The deputy commissioner determined that based upon the claimant's tax returns, the average weekly rate is $798.31, with a compensation rate of $532.23. The deputy also held that employer can recoup the overpayment. The full commission affirmed, and this appeal follows.

BACKGROUND

Claimant began working as a server at TGI Friday's in Manassas on August 28, 2005 and continued at that location until mid-March, 2006. She left Manassas and began working as a server at the TGI Friday's in Tysons Corner on April 3, 2006 until her injury on June 11, 2006.

Claimant testified that at the Tysons Corner location the clientele was better, the restaurant was newer and busier, and the tips were "ridiculously good." Her manager made her a trainer "not too long" after moving to Tysons Corner. She was paid a higher hourly rate and made more in tips for the hours she worked as a trainer because she kept the tips of the employees in training until they were validated as servers. She estimated she would receive $30 per hour in tips. Claimant stated that she believed her position as a trainer was going to continue because "one of the things that [the manager] wanted to do was . . . to train people at Tyson's and then send them out to [other] stores." Claimant's payment records from April 18, 2006 through June 12, 2006 show that she worked as a trainer for fifty hours and as a server for approximately 344 hours.

Claimant's former manager testified that it was against company policy to take trainee's tips once the trainee was serving tables on their own even though they were still being observed by the trainer.

In 2005, claimant's taxable income from TGI Friday's, as reported on her 2005 federal income tax return, was $11,783.81. In 2006, her income from TGI Friday's, as reported on her income tax return, was $17,753.73 for combined total earnings of $29,537.54 for both years.

The commission made a factual finding that she worked for TGI Friday's for 37 weeks. In determining her average weekly wage, the commission totaled her taxable income from 37 weeks at TGI Friday's, $29,537.54, and divided that sum by 37, reaching an average weekly wage of $798.31.

This appeal follows.

ANALYSIS

Mutual Mistake

Claimant argues the commission erred in modifying her average weekly wage from the original amount agreed upon in the agreement to pay benefits form. Her sole argument on appeal is that the parties intended to use only her earnings at Tysons Corner to calculate her average weekly wage and that the commission cannot alter the agreement from what the parties originally intended. We reject this argument because it ignores the principles of Mercy Tidewater Ambulance Serv. v. Carpenter, 29 Va. App. 218, 511 S.E.2d 418 (1999), and Collins v. Dept. of Alcoholic Beverage Control, 21 Va. App. 671, 467 S.E.2d 279, affd on reh'g en banc, 22 Va. App. 625, 472 S.E.2d 287 (1996), as discussed below.

"[A]n employee's average weekly wage, even after being agreed to by the parties and set forth in an award of the commission, is subject to modification upon the grounds of fraud, misrepresentation, mistake or imposition." Carpenter, 29 Va. App. at 226, 511 S.E.2d at 421-22. It is immaterial whether the mistake of fact is mutual or unilateral. Collins, 21 Va. App. at 680, 467 S.E.2d at 283. In order for the commission to vacate an award, allegations of fraud,

misrepresentation, or mutual mistake must be proven by clear and convincing evidence. <u>Miller v. Potomac Hosp. Foundation</u>, 50 Va. App. 674, 686, 653 S.E.2d 592, 598 (2007).

In <u>Collins</u>, the adjuster used eight of claimant's pay stubs as a basis for calculating claimant's average weekly wage. The adjuster prepared a memorandum of agreement that was executed by the parties and ultimately approved by the commission. 21 Va. App. at 674, 467 S.E.2d at 280. It was later discovered that claimant's actual average weekly wage was less than what had originally been agreed to by the parties. Finding that a mutual mistake of fact had been made, the commission amended the average weekly wage to reflect the lesser figure. This Court affirmed, stating that "[t]he parties simply made a substantial *mistake* in computing claimant's average weekly wage necessary to determine claimant's award." <u>Id.</u> at 680, 467 S.E.2d at 283 (emphasis in original). The Court further explained:

> In determining whether a mutual mistake of fact existed at the time of the agreement, the inquiry is not . . . who initially made the mistake, but rather, whether each party held the same mistaken belief with respect to a material fact at the time the agreement was executed. In this case, each party went forward under the mistaken belief that the average weekly wage set forth in the agreement was correct, when, in fact, it was not. The mistake was mutual.

<u>Id.</u> (citation omitted).

In this case, the commission found that the mistake occurred in the calculation of claimant's average weekly wage. The agreement based claimant's 2006 earnings on her wages as reported in her pay stubs. The commission explained that his sum, $10,360.89, did not accurately reflect her 2006 earnings because this figure did not include claimant's unreported tips. In addition, the agreement also based the calculation on an eight-week pre-injury work period instead of the nineteen weeks that claimant worked in 2006.

For the reasons that follow, we find that the commission did not err in finding that a mistake was made in the initial calculation of claimant's average weekly wage.

<u>Average Weekly Wage</u>

"'The reason for calculating average weekly wage is to approximate the economic loss suffered by an employee or his beneficiaries when there is a loss of earning capacity because of work-related injury or death.'" <u>Chesapeake & Potomac Tel. Co. v. Williams</u>, 10 Va. App. 516, 519-20, 392 S.E.2d 846, 848 (1990) (quoting <u>Bosworth v. 7-Up Distrib. Co.</u>, 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987)).

Generally, the average weekly wage is calculated based on the employee's actual earnings for the 52 weeks before the accident. Code § 65.2-101.[1] When the employment prior to the injury lasts less than 52 weeks, the earnings shall be divided by the number of weeks worked as to be "fair and just" to both parties, or if it be impractical to so compute the average weekly wage, the wage shall be consistent with the wage earned by a person employed in the same "grade and character" of the injured employee. However, subsection (b) provides other

---

[1] Code § 65.2-101(1)(a) provides:

> The earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, divided by 52; but if the injured employee lost more than seven consecutive calendar days during such period, although not in the same week, then the earnings for the remainder of the 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. When the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided that results fair and just to both parties will be thereby obtained. When, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

methods of computation for appropriate situations and in the interest of fairness to both the employer and the employee. "When for exceptional reasons the foregoing would be unfair either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." Code § 65.2-101(1)(b).

Claimant argues that her tax returns reflect an average weekly wage that approximates the wage originally agreed by the parties. She reasons that if the wages she earned working at other restaurants during 2005 and 2006 are subtracted from her total income during those years, the balance of her income while working at the Tysons Corner TGI Friday's is $12,475.41. Because she worked at Tysons Corner for 9.71 weeks, her average weekly wage was $1,284.80. In other words, claimant suggests that her average weekly wage be based solely on the last nine weeks of her employment when her wages were substantially higher than the previous months.

Employer responds that pursuant to Code § 65.2-101(1)(a), the proper manner of calculating the claimant's average weekly wage is to consider all of her wages over a 52-week period prior to her injury and divide that sum by the total number of weeks worked. In this case, argues employer, the commission correctly determined that claimant made a total of $29,537.54 working for TGI Friday's in 2005 and 2006. She worked for 37 weeks, yielding her an average weekly wage of $798.31. We agree with employer.

Often the best evidence of a claimant's income is that which is reflected in his or her income tax returns. Chesapeake Bay Seafood House v. Clements, 14 Va. App. 143, 147, 415 S.E.2d 864, 866 (1992).

> It [is] the duty of the [c]ommission to make the best possible estimate of future impairments of earnings from the evidence adduced at the hearing, and to determine the average weekly wage that [the claimant] was able to earn. This is a question of fact to be determined by the [c]ommission which, if based on credible evidence, will not be disturbed on appeal.

Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986). "Thus, if credible evidence supports the commission's findings regarding a claimant's average weekly wage, we must uphold those findings." Clements, 14 Va. App. at 146, 415 S.E.2d at 866.

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "However, because statutory interpretation presents a pure question of law, it is subject to *de novo* review by this Court." Turf Care, Inc. v. Henson, 51 Va. App. 318, 334, 657 S.E.2d 787, 794 (2008).

The commission found that, based upon the employer's records, the claimant worked for the employer from August 28, 2005 through January 9, 2006 (19.29 weeks), January 24, 2006 through March 20, 2006 (8 weeks), and from April 4, 2006 through June 11, 2006 (9.86 weeks) for a total of 37.15 weeks. The commission further concluded that the claimant's combined earnings, as shown by her 2005 and 2006 tax returns, most accurately reflect the economic loss suffered by her as a result of the injury. Thus, the total wages ($29,537.54) divided by the number of weeks claimant worked (37), yields an average weekly wage of $798.31. We find credible evidence in the record to support this finding.[2]

We find the record contains credible evidence that appellant's pre-injury average weekly wage was $798.31, and the commission did not err in so finding.

### Pay Increase is not a Promotion

Claimant reasons that the commission should have considered only her wages at Tysons Corner because her job there involved new duties as a trainer where she received a higher hourly wage and collected the tips of her trainees. She relies upon Workers' Compensation

---

[2] Although the commission determined that claimant actually worked for 37.15 weeks for employer, it used 37 weeks in calculating claimant's average weekly wage.

Commission case law that has carved out two exceptions to using the earnings from the previous 52 weeks for the calculation: 1) a promotion; and 2) a change in job status. Fleshman v. Checkers Check Cashing, 74 O.W.C. 148 (1995).

Essentially, the commission's two exceptions are no more than application of the statutory exceptions discussed in Code § 65.2-101(1)(b) which provides that when it is unfair either to the employer or employee, another method of computing average weekly wages may be resorted to as "will most nearly approximate the amount which the injured employee would be earning were it not for the injury." This fairness provision clearly encompasses the concept of considering promotion, pay increases, or a change in job status.

The commission has found that such "exceptional reasons" exist when a claimant can establish that he or she has received a promotion or change in job status, classification or duties. See e.g., Fleshman, 74 O.W.C. 148. Here, the commission made a finding of fact that the claimant "was not promoted nor did her job classification change." In addition, the commission concluded that in addition to earning the same hourly wage at her "regular" job, she "simply began to work a few hours a week as a trainer for new employees at an increased hourly wage." The commission held that there was no evidence before it regarding the number of hours claimant would have worked in the future as a trainer had she not been injured. The commission explained that the record contains no evidence that the server turnover rate would sustain a need for a trainer every week. "Given the lack of evidence as to the frequency of new hires, it would be pure speculation to determine that the claimant's training duties would continue each week . . . ." Thus, the commission concluded that it would be inappropriate to base claimant's average weekly wage solely on those weeks in which she performed training.

Based upon her subjective opinion, claimant anticipated that her job as trainer would continue. In her deposition, a transcript of which was filed with the commission, claimant stated

that she had been elevated to a trainer not long after being transferred to the Tysons Corner location. When asked whether this was a permanent or temporary position, she responded that as far as she knew, the job as trainer "was going to continue because one of the things that [the store manager] wanted to do was he wanted to train people at Tyson's and then send them out to their stores." However, her pay stubs indicated that from April 18 through June 12, 2006 she worked as a trainer for only two of the four pay periods and only for a total of fifty hours. Thus, from her pay stubs the commission properly concluded that the trainer duties were just an occasional part of her job and no evidence was presented by the claimant that these duties were ongoing. The commission therefore correctly determined that absent a promotion or change in job status, classification or duties, the claimant's average weekly wage must be computed based upon her actual wage records for the entire period of her employment and not the speculative anticipation of possible future earnings.

### Spoliation of Evidence Inference

> Virginia law recognizes a spoliation or missing evidence inference, which provides that "[w]here one party has within his control material evidence and does not offer it, there is [an inference] that the evidence, if it had been offered, would have been unfavorable to that party." Charles E. Friend, The Law of Evidence in Virginia § 10-17, at 338 (5th ed. 1999); see Jacobs v. Jacobs, 218 Va. 264, 269, 237 S.E.2d 124, 127 (1977) (holding principle is an inference rather than a presumption).

Wolfe v. Virginia Birth-Related Neurological Injury Comp. Program, 40 Va. App. 565, 580-81, 580 S.E.2d 467, 475 (2003). "A spoliation inference may be applied in an existing action if, at the time the evidence was lost or destroyed, 'a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.'" Id. (quoting Boyd v. Travelers Ins. Co., 652 N.E.2d 267, 270-71 (Ill. 1995)).

Claimant contends she is entitled to a spoliation inference because she presented her best and most accurate evidence, namely her "tip out sheets" and calendar, to employer who lost

them. Essentially, claimant wants to use the tip sheets to prove her tax returns are erroneous. Employer responds that claimant has presented no reliable evidence demonstrating that the alleged handwritten documents ever existed or were lost by employer. Furthermore, reasons employer, spoliation is not an issue because the most reliable means of calculating claimant's average weekly wage was reliance upon the information contained in her state and federal income tax returns. We agree with employer.

The commission found that since its calculations were based upon the tax returns, use of the claimant's tip out sheets would not provide a different result. We agree and conclude that the commission did not err in disallowing a spoliation inference.

## Equitable Estoppel

Claimant argues, in her brief, that the employer is equitably estopped from asserting her average weekly wage is something other than a figure that would entitle her to a temporary total disability rate of $776. This issue was not included in her assignment of error. Rule 5A:20(c) requires us to hold that this issue is waived because it is not part of claimant's assignment of error. See Winston v. Commonwealth, 51 Va. App. 74, 82, 654 S.E.2d 340, 345 (2007) (holding that because an appellant did not include an argument in his questions presented (now assignments of error), the Court would not address it on appeal); see also Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (declining to consider an issue on appeal because it was not "expressly stated" in the questions presented (now assignments of error)).

## Credit

Claimant's final assignment of error contends that employer should not be entitled to a credit pursuant to Code § 65.2-520. Claimant argues the payments were made pursuant to an award by the commission, the miscalculation was not apparent to claimant, and claimant should

receive an offset award credit "due to the equity of the situation." However, claimant cites no legal authority in support of her position.

Rule 5A:20(e) requires that the appellant's opening brief include "argument (including principles of law and authorities) relating to each assignment of error." Claimant's argument in support of her assignment of error does not meet the requirements of Rule 5A:20(e). Not only does claimant fail to argue the issue with any specificity, relying instead on a few broad, conclusory assertions, she also fails to provide any citation to controlling legal authority that supports her position. And, as we noted in <u>Buchanan v. Buchanan</u>, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992), "[s]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration." This assignment of error does not give any legal basis for the Court to decide this issue. We find this failure to comply with Rule 5A:20 is significant. <u>Jay v. Commonwealth</u>, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008). Because claimant waived this issue, we will not consider this argument on appeal.

<u>CONCLUSION</u>

For the foregoing reasons, we find the commission did not err in modifying claimant's average weekly wage from $1,295.11 to $798.31. We do not consider claimant's argument that employer should not be entitled to a credit. The decision of the commission is affirmed.

<u>Affirmed.</u>